# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

RONALD F. WYATT,

               Petitioner,

      vs.

FRANK LUNA,

               Respondent.        Case No. 3:05-cv-116-JKS

## MEMORANDUM IN SUPPORT OF AMENDED PETITION FOR 28 U.S.C.§2254 RELIEF

### STATEMENT OF JURISDICTION

Subject Matter Jurisdiction

The District Court has jurisdiction to rule on this habeas corpus petition pursuant to 28 U.S.C. § 2254.

### STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the State Trial Court Violated Mr. Wyatt's Sixth Amendment Right to Confrontation?

2.     Whether the State Trial Court Violated Mr. Wyatt's Fifth Amendment Right to Testify?

3.      Whether Trial Counsel's Failures Violated Mr. Wyatt's Sixth Amendment Right to Counsel?

### .STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter AEDPA ) applies to this case as the Act became effective on April 24, 1996 and Mr. Wyatt filed his Petition on May 20, 2005.

The AEDPA provides that a petitioner may obtain relief only where:  (1) the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as established by the Supreme Court of the United States;" or (2) the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C.§2254(d).

The clearly erroneous standard is applicable to a habeas petition under the AEDPA.  The harmless error standard applies to all habeas petitions in general, including those where the state courts failed to make, or improperly performed a harmless error analysis.  *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *Bains v. Cambra*, 204 F.3d 964, 976-77 (9th Cir. 2000).  The standard for determining whether cumulative trial error may have resulted in a denial of due process is similar to the analysis under *Brecht*.  *Donnelly v. Decristoffero*, 416 U. S. 634 (1974).

<u>STATEMENT OF THE CASE</u>

<u>Exhaustion of Remedies:</u>

Prior to a state convicted petitioner filing a claim in federal court he must have taken his claims to state court for the court to be given a full and fair opportunity to resolve federal constitutional claims. *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999).

On May 20 2005 Mr. Wyatt, acting *pro se*, filed a Petition for Writ of Habeas Corpus for relief from his conviction for first degree murder on the basis that his federal constitutional rights were violated during his trial by the court and his counsel.  His Petition set out twelve grounds for relief and the status of exhaustion on each.  This Petition amends the petitioner's claims for relief, and requests an evidentiary hearing.

Mr. Wyatt was charged with first degree murder and two counts of tampering with physical evidence in connection with the death of his wife, Diane Wyatt on October 22, 1992.  He was convicted and sentenced to 104 years imprisonment.  (Exh. A).

Mr. Wyatt appealed his conviction and sentence.  The Alaska Supreme Court accepted review on the issue of the admissibility of the hearsay statement of Diane Wyatt to a womens' abuse center counselor.  The Alaska Supreme Court affirmed on May 17, 1992.  (Exh. B).

Mr. Wyatt filed an Application for Post Conviction Relief on May 19, 2000 and was appointed counsel at public expense.  A First Amended Application for Post Conviction Relief was filed.  The state moved to dismiss.  Mr. Wyatt then filed an opposition to the state's motion and a Second Amended Application for Post Conviction Relief.  The trial court granted the state's motion to dismiss.  (Exh. C).  Mr. Wyatt filed a Motion for Reconsideration which was denied.  (Exh. D).

Mr. Wyatt filed a timely appeal to the Court of Appeals which affirmed the trial court's dismissal of the Post Conviction Relief Petition.  (Exh. E).  Mr. Wyatt submitted a Request for Reconsideration which was summarily denied on January 14, 2005.  (Exh. F).  Mr. Wyatt filed a Petition for Hearing to the Alaska Supreme Court from the Decision of the Court of Appeals affirming denial of his Post Conviction Relief Petition by the superior court.  The Alaska Supreme Court denied the Petition for Hearing on May 5, 2005.  (Exh. G).

<u>FACTUAL BACKGROUND</u>

Diane Wyatt died on October 22, 1992 after sustaining three blunt injuries and a .25 caliber gunshot wound to her head.  ( Exh. J, TR 3015-18, 3031).  On autopsy the contents of Mrs. Wyatt's stomach were analyzed by a forensic pathologist who determined that the contents were identifiable and had not entered into her small intestines at the time of her death, thereby, placing death within several hours after consuming lunch on October 22.  (TR3117-18, 3137).

On the afternoon of October 22, Mrs. Wyatt met her sister Susan Vik for lunch (TR 1178). Mrs. Wyatt had borrowed her sister's vehicle and after lunch intended to meet, at a remote site outside Ketchikan, a male friend Robert Luse, a co-worker with whom she had developed a relationship. The meeting was scheduled for approximately 3:00 pm. Later the same afternoon, Mr. Luse notified Susan Vik that Mrs. Wyatt had not kept their appointment. (TR 1181, 1184).

Mrs. Wyatt's sister and daughter became greatly concerned about her absence and failure to contact them as prearranged on October 22 and 23. On October 23, they confronted Mr. Wyatt about his wife's disappearance. The Alaska State Troopers (AST) were notified of Mrs. Wyatt's disappearance on October 23. (TR 1248).

During the investigation of Mrs. Wyatt's disappearance, Mr. Wyatt told the AST that the last time he had seen his wife was on the morning of October 23 and that she was sleeping in a bedroom at their home. (TR 4778-9).

After five days of searching for Mrs. Wyatt, her body was found submerged in the waters of Ward Cove outside Ketchikan. Her body was wrapped in fish net, a blue tarp, chains and two anchors. (TR 3610-11).

The AST investigation focused on Mr. Wyatt who was indicted for violation of AS 11.431.100(a)(1)and AS 11.56.610(a)(1) and (a)(4). The state's theory was that Mr. Wyatt murdered his wife because of her intent to divorce him and to obtain her financial assets. Mr. Wyatt pled not guilty to all counts.

AST interviewed Mr. Luse but did not conduct any investigation of Mr. Luse and his wife, his boat, auto, or guns.(TR 1486).  Mr. Luse had, a few days prior to the death of Mrs. Wyatt, told his wife he was leaving her.  Mrs. Luse had confronted her husband with a gun in a public place and was visibly distraught.  (TR 297).

During a six week trial, a neighbor of the Wyatts' testified that she saw the Wyatts' Isuzu Trooper vehicle traveling at a high rate of speed up the driveway of the Wyatts' home at approximately 2:30 to 3:00pm on October 22.  (TR 1897-11).  The neighbor could not identify the driver of the vehicle.  (TR 1819).

Keith Perkins, the Wyatts' house mate, testified that he observed Mr. Wyatt return to the house at approximately 5 pm on October22, wash his hands, drink a glass of milk and go into the basement and carry boxes to the beach where he burned them.  (TR 1693-99).

Lloyd Hawn, an employee of a pulp mill located in the Ward Cove area outside Ketchikan, testified that on October 22, at 10:30 pm, while he was making security rounds he observed a vehicle parked in front of a gate to the log sorting yard.  He called the vehicle's license number to a dispatcher who obtained identification of the vehicle as registered to the Wyatts.  The vehicle was an Isuzu Trooper.  While he was sitting in his vehicle, a man approached the vehicle, apologized for trespassing and stated that he needed to relieve himself so he had gone to the area to do so.  Mr. Hawn described the

man as being wet and muddy from the waist down. (TR 2244-47). Mr. Hawn was unable to identify the man who drove away in the vehicle. (TR 2255-56).

Robert Luse testified that on October 23 he went out in his boat and because of an inner voice, which began after he served in Viet Nam, he believed that Mrs. Wyatt was in the water. (TR 1476-81). Mr. Luse's boat was docked at a location two to three minutes from the Wyatt home. (TR 1484). Mr. Luse testified that AST did not investigate him. (TR 1457-58).

Several weeks after Mrs. Wyatt's body was found, a co-employee of Mr. Wyatt contacted the AST and related a purported conversation, which occurred in September 1992, in Mr. Wyatt's office in which he allegedly stated that if he killed his wife he would weight the body down so it would never be found. This conversation allegedly took place when Mr. Wyatt and another employee were discussing another murder in Ketchikan in which a husband was killed by his wife and the wife wrapped the body in a tarp and buried it under a porch. (TR 931).

Ms. Vik, Mrs. Wyatt's sister, testified that she did not tell the police, until one year after the arrest of Mr. Wyatt, that Robert Luse telephoned her on October 21, 1992 and told her that he had a serious disagreement with his wife the previous evening about his decision to leave and that his wife confronted him with a gun in a public parking lot at 5:30 am and threatened to commit suicide. (TR 1324-1330).

Ms. Vik did not give the Luse information to the grand jury nor did she tell the grand jury that Mrs. Wyatt intended to meet Mr. Luse in Oregon in October 1992, a few days prior to her return to Alaska, after a vacation with Mr. Wyatt. (TR 1353-54, 804-05, 807).  Mrs. Wyatt changed plans and returned directly to Ketchikan with her husband rather than meeting Mr. Luse.  (TR 804-807).

<u>ISSUES</u>

1.      <u>Whether the State Trial Court Violated Mr. Wyatt's Sixth Amendment Right to Confrontation:</u>

The confrontation clause of the Sixth Amendment provides that "In all criminal prosecutions the accused shall enjoy the right... to be confronted by the witnesses against him".  The essential purpose of the confrontation right is to secure to the defendant the opportunity to cross examine. *Davis v, Alaska*, 415 U. S. 308, 315 (1974), so that the trier of fact has a satisfactory basis for evaluating the truth of a prior statement.  *Dutton v. Evans,* 440 U. S. 74, 89 (1970).  Reliability of a prior statement may be shown by the statement falling within a firmly rooted hearsay exception or showing a particularized guarantee of trustworthiness because of the totality of the circumstances surrounding the making of the statement that rendered the declarant worthy of belief.  *Idaho v. Wright*, 497 U.S. 805, 818 (1990).  To be trustworthy for confrontation purposes, it must be shown that the declarant actually made the statement in question.  *Dutton v. Evans,* 400 U. S. at 89.

Diane Wyatt allegedly, on October 22, 1992, telephoned a womens' abuse shelter (WISH), spoke to a counselor, and requested divorce information.  In response to a question from the counselor whether she was safe, Diane Wyatt allegedly stated that it was a "lethal situation unless she kept her mouth shut" about the divorce.  The WISH counselor testified in response to the prosecutor's question, in violation of a protective order, that WISH was a women's abuse center.  (TR 841-43).  The trial court provided a cautionary instruction to the jury that Mrs. Wyatt's statement was to be considered only for the fact that she intended to seek a divorce.  (TR 841).

The record does not support that Mrs. Wyatt made the statement.  The WISH counselor had not met Mrs. Wyatt in person and could not and did not recognize her voice.  The caller did not provide any other identifying information other than a name and did not seek counseling.  The caller made an appointment to meet with the counselor on October 23 at 1:30 pm to obtain the requested information.  (TR 857).

The state's theory of Mrs. Wyatt's murder was that Mr. Wyatt was controlling and domineering and murdered her because she intended to divorce him, thereby, denying him access to her assets including her beach front home.

Mrs. Wyatt's statement, therefore, was extremely consequential and important to the state's theory.  The statement clearly inferred that she was highly at risk of injury or death from her husband because of her intent to divorce.  The evidentiary value of the statement was further enhanced when the prosecutor violated the protective order,

allowing the jury to infer from her contacting WISH that Mrs. Wyatt had suffered physical abuse from her husband on prior occasion.

There was no evidence that Mr. Wyatt had physically abused or was violent toward Mrs. Wyatt on prior occasions.  There also was no evidence that Mrs. Wyatt explained, defined, or described what she meant by the word "lethal".   There was testimony that Mr. Wyatt and Mrs. Wyatt met in Oregon with a marriage counselor in early October 1992, and during the meeting, Mrs. Wyatt stated that she wanted a divorce, so that, Mr. Wyatt knew that she intended to divorce him prior to their return to Alaska. (TR 642).   Thus, there was no reason for Mrs. Wyatt to believe that her husband was unaware of her intent to divorce or to state that there would be a lethal situation when he learned of her intent.

The trial court admitted, over repeated defense objection, Mrs. Wyatt's statement on the basis that it met the "state of mind" exception to the hearsay rule.  The Court of Appeals disagreed, finding that the statement did not fall within the state of mind exception.  The Court of Appeals found that admission of the statement, however, was harmless error.  The Supreme Court reversed, finding that the statement was within the exception meeting the "indicia of reliability" required, and that there was no violation of the confrontation rights of Mr. Wyatt, so that, the Court of Appeals applied the correct harmless error analysis.  The Court of Appeals did not analyze the prejudicial versus

probative value of the hearsay statement pursuant to federal or the Alaska Rule of Evidence 403.  *Wyatt v. State,* 981 P.2d 109, 115-116 (Alaska 1999).

Mr. Wyatt claims that the admission of the statement was constitutionally improper and extremely prejudicial to his defense and that admission of the "lethal" language could not be cured with a cautionary instruction.

The issue of whether Mrs. Wyatt wanted a divorce was elicited from her sister, Ms. Vik, as well as from the marriage counselor in Oregon.  Thus, Mrs. Wyatt's statement was cumulative.  Her statement should have been limited to the WISH counselor informing the jury of the reason the center was contacted on October 22, 1992, without including the "lethal" language.  The only purpose for admitting such inflammatory language was to create in the minds of the jurors the belief that Mrs. Wyatt believed that when her husband learned of her intent to divorce, he was a danger to her well being. The inference to be drawn from her statement was that she clearly identified her killer, so it is an extreme stretch of creditability for the state courts to find that admission of such language could be harmless

The importance of Mrs. Wyatt's statement to the prosecutor's closing argument was crucial and monumental. The WISH counselor was one of the first witnesses for the prosecution, thereby, planting firmly in the minds of the jurors the "lethal" language from the beginning of trial. When the prosecutor argued that Mrs. Wyatt was in the courtroom, as to who she was and how she thought, her statement went to the ultimate issue and

clearly identified who she believed would kill her.  Argument that a limiting instruction can or will cure such highly prejudicial testimony is nonsensical.

Mrs. Wyatt's hearsay statement should have been excluded on a proper application of the federal or Alaska Rule of Evidence 403, which provides that evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence. The trial court's failure to exclude the "lethal" language of the hearsay statement bolstered the prejudicial value and insured that Mrs. Wyatt testified to the identity of her killer without cross examination or confrontation in violation of Mr. Wyatt's Sixth Amendment rights.

28 U. S. C.§2254 (d) provides that federal courts may review when state courts have not found constitutional error or performed the correct harmless error review. *Hanna v. Riveland,* 87 F.3d 1034, 1038, n.2 (9th Cir. 1996).  The trial court's decision on the admissibility of Mrs. Wyatt's hearsay statement was an unreasonable application of the federal and Alaska law concerning the right to confrontation and an unreasonable determination of the facts in light of the evidence presented..

2.    <u>Whether The State Trial Court Violated Mr. Wyatt's Fifth Amendment Right to Testify?</u>

Mr. Wyatt's Second Amended Application for Post Conviction Relief claimed that the state trial court violated his constitutional rights by failing to obtain from him the waiver of his right to testify on his own behalf.

Under *LaVigne v. State,* 812 P.2d 217 (Alaska 1991), the Alaska courts have identified two requirements to establish that a defendant has waived his constitutional right to testify in his own behalf. The trial judge must confirm that the defendant understands that the choice to testify is his and not his counsel and that the defendant voluntarily waives the right. *Id. a*t 222. The decisions in *Mute v State,* 954 P.2d 1384 (Alaska App. 1990), and *Knix v. State,* 922 P.2d 913, 918, n.6 (Alaska App. 1996), did not relax the requirements. Additionally, the court in *Weist v. Anchorage,* 929 P.2d 668 (Alaska App. 1996), requires that a defendant show that he would have offered relevant testimony if he had been allowed to testify.

The trial court inquired only of whether Mr. Wyatt understood that he had a right to testify but failed to inquire if Mr. Wyatt was waiving his right. (TR 6058). Alaska law does not require that a defendant affirmatively assert a right to testify. The court is required to inquire and obtain the affirmative waiver. Mr. Wyatt had no prior criminal history and or experience with the courts to either know or believe that he had the right to speak to the court in opposition to his counsel's representations. The prosecutor expected Mr. Wyatt to testify. (TR 6059).

By not affirmatively asserting a right to testify when there was no question from the court, Mr. Wyatt complied with the conduct expected of a defendant and it is unreasonable to expect him to know when to speak when there is no question directed to him.

Additionally, the court in *Weist v. Anchorage*, 929 P.2d 668 (Alaska App. 1996), held that a defendant must show that he would have offered relevant testimony if he had been allowed to testify.  Mr. Wyatt at sentencing told the court that he wanted to testify and had not been allowed to by his counsel.  He filed an affidavit which identified at least fourteen issues on which he would have offered testimony which was relevant to his defense if he had been permitted to testify. (Exh. H)  Mr. Weidner, defendant's counsel's affidavit attested that during trial Mr. Wyatt wanted to testify in his own defense to address misimpressions created by the prosecution's witnesses and that he opposed Mr. Wyatt doing so. (Exh. I).

The prosecution asserted that Mr. Wyatt killed his wife because he was motivated by a desire to avoid the loss of his wife's financial assets and to prevent her from learning of his transfer of monies from her banking account to his account.  Mr. Wyatt's testimony would have established that his income was the primary source of income in the marriage and in excess of $12,000 per month and that the money transferred from the account was his personal money.

The only evidence suggesting that the murder of Mrs. Wyatt occurred in the family home was two small spots of blood found on two boxes located in the basement of the home.  Mr. Wyatt would have testified to the manner in which the small spots were made on the two boxes, that is , that his wife had sustained an injury to her nose on a prior occasion and sat on a bucket by the basement door to treat the injury.( EXH. H).

Central to the state's case was testimony that Mr. Wyatt was seen at the log sorting yard where his wife's body was later found. The state presented evidence that Tylenol #3, which was prescribed by Mr. Wyatt's physician on the morning of October 22, would not cause diarrhea. On cross examination, the physician admitted that the side effects of an antibiotic prescribed for Mr. Wyatt could cause diarrhea. (TR 3208, 3214). Mr. Wyatt would have testified that he told the security guard that he was taking medication for digestive not diarrhea problems and that he had previously been told by a local store's employees that the store bathroom at their facilities was for employees only.( Exh. H).

A co-employee of Mr. Wyatt testified that when Mrs. Wyatt returned to work in October, after her return from vacation, she appeared to be frightened of Mr. Wyatt. Mr. Wyatt would have shown that this testimony was pure fabrication as his wife did not return to work after vacation and before her death on October 22, 1992. .

Because the state's case was entirely circumstantial, Mr. Wyatt's testimony was not only relevant but crucial to his defense. By providing non-incriminating explanations for the few shreds of physical evidence and clarifying the circumstances, Mr. Wyatt may have convinced the jury to acquit. The right to testify is of constitutional stature. The trial court's failure to follow Alaska and federal law which was in place to protect a defendant's right to testify violated Mr. Wyatt's constitutional right.

3.     Whether Mr. Wyatt's Trial Counsel's Failure to Request a Lesser Included Offense Jury Instruction and to Obtain Independent Analysis of a Critically Important Blood Sample Violated Mr. Wyatt's Sixth Amendment Right to Counsel?

To demonstrate that trial counsel's representation was deficient, Mr. Wyatt must overcome a strong presumption that his counsel's performance fell within a wide range of reasonable assistance. *Silva v. Woodford,* 279 F.3d 825, 836 (9th Cir. 2002), quoting *Strickland v. Washington,* 466 U. S. 668, 688 (1984). Mr. Wyatt must demonstrate that there is a reasonable probability that but for counsel's ineffective assistance the result of the proceedings would have been different. *Id.* at 694. The *Strickland* court held that the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* at 687. Effective assistance of counsel has been held to be a mixed question of law and fact and the district court is not bound by a state's determination that the defendant received adequate representation. *Young v. Zant,* 677 F.2d 792, 800, n.2 (11th Cir. 1982).

LESSER INCLUDED OFFENSES: Mr. Wyatt's ineffective assistance claims arise out of his trial counsel's failure to request a jury instruction on lesser included offenses. First degree murder requires an intent to cause the death of a person. A.S. 11.41.100. Second degree murder requires the intent to cause serious injury, knowledge that conduct is substantially certain to cause death or serious injury or conduct manifesting an extreme indifference to the value of human life. A.S. 11.41 130.

Manslaughter requires that the killing occur intentionally, knowingly or recklessly under circumstances not amounting to first or second degree murder.  A.S. 11.41.120.  Criminal negligent homicide involves the death of a person caused by criminal negligence.  A.S. 11.41.130.

Under the American Bar Association's Standards for Criminal Justice, decisions as to lesser included offenses are ranked among the most important in a criminal case.  *State v. Laraby,* 842 P.2d 1275, 1280, n.1 (Alaska App. 1992).  The court in *Laraby* stated that an attorney's duty to protect the rights of a client with respect to the matter of requesting a lesser included offense instruction cannot be dismissed as the type of mistake that falls within the norm of competent representation. *Id.* at 1280.

There was ample evidence that if Mr. Wyatt committed the murder, it was in the heat of passion.  The prosecutor argued in closing that Mr. Wyatt suspected his wife of seeing another man and was in a unstable mental state immediately before the time of his wife's death. (TR 6059).  The state's evidence indicated that Mrs. Wyatt was unhappy and wanted a divorce, and that the Wyatts argued.   The prosecutor's closing argument included that Mr. Wyatt was highly desperate and was using codeine the day of the murder.  The jury may have found that events occurred that caused Mr. Wyatt to be in a rage in the short time span in which the state believed Mrs. Wyatt was killed, so that, the jury may have questioned whether the killing occurred as a result of heat of passion.  There also was evidence that the killing may have been the result of a fight in which there

was mutual combat as Mrs. Wyatt sustained injuries to her fingers consistent with combat. (TR 3025).

The state argued that trial counsel made a tactical decision not to purpose lesser included offense instructions. Trial counsel's affidavit, submitted with Mr. Wyatt's First Amended Application contradicts the state's argument attested that he did not make a conscious choice to fore-go lesser included offense instructions. Mr. Weidner's affidavit demonstrates that he failed to consider viable alternatives and assumed that there was no middle ground between guilt for murder and innocence. The failure to consider the possibility of lesser included offense instructions in a case where the crime charged has a maximum penalty of 99 years is clearly ineffective. *Young v. Zant*, 677 F.2d at 799.

TWO BLOOD SPOTS: The only evidence to support the death of Mrs. Wyatt in the basement of her home was two small blood spots found on two boxes located in the basement. (TR 4455). The blood spots were crucial to the state's case. The defense did not obtain independent analysis of the blood spots. Defense counsel was aware that a state laboratory report, dated August 16, 1993, which was four weeks before trial, concluded that the blood spots were consistent with Mrs. Wyatt's blood. The report stated that the extracts from the boxes had been retained in the laboratory's low temperature freezer. Defense counsel's affidavit admitted that he was unaware that he received the report indicating that the blood evidence was available for testing and if he had been aware he would have had the extract tested. The failure of trial counsel to

review discovery from the state and to not obtain testing of the blood extract denied Mr.

Wyatt an opportunity to present an effective defense. *Demarest v. Price*, 130 F.3d 922

(10th Cir. 1997).

The court below did not find that trial counsel's failure to have the critical

evidence analyzed, which the state used to confirm that Mrs. Wyatt was killed in the

basement of her home, fell below the standard of care required by the decision in *Risher*

*v. State,* 523 P.2d 421, 424 (Alaska 1974).  There were no eye witnesses to the killing of

Mrs. Wyatt.  There was no admission of guilt.  No one placed Mrs. Wyatt at home on the

afternoon of October 22.   During trial there was evidence that Mrs. Wyatt had been

grocery shopping prior to meeting her sister for lunch.  Yet, there was no evidence that

grocery bags were found in her vehicle or in the home.

The defense theory was that Mr. Luse was responsible for Mrs. Wyatt's death.

Mrs. Wyatt told her sister that she was going directly after lunch to meet Mr. Luse.( TR

1181, 1184).   Eliminating the sole piece of physical evidence that Mrs. Wyatt's death

occurred at home would have raised a reasonable possibility that the jury would have

doubted Mr. Wyatt killed his wife.

## CONCLUSION

Trial counsel's failures to provide effective assistance prejudiced Mr. Wyatt's defense.

Counsel's failure to request a lesser included offense instruction virtually assured that, if

convicted, his client would remain in prison for the rest of his life.  The failure to not

obtain independent testing of the blood extracts which the state indicated were consistent with Mrs. Wyatt's blood and which was the only evidence that tied Mrs. Wyatt's death to the home can not be considered non-contributory to conviction when the state's case was premised on the belief that the killing occurred at the Wyatt home. The failure of defense counsel to investigate critical issues commonly forms the basis for finding ineffective assistance of counsel. *Driscoll v. Delo,* 71 F.3d 701 (8th Cir. 1995).

The ineffective assistance of counsel coupled with the trial court's failure to obtain a waiver of Mr. Wyatt's right to testify on his own behalf and the trial court's admission of the hearsay statement of Mrs. Wyatt, which was highly prejudicial to Mr. Wyatt as well as cumulative, leaves no doubt that Mr. Wyatt's Petition for Habeas Relief should be granted.

Dated at Anchorage, Alaska this 26th day of May 2006.

HAGANS, AHEARN & WEBB
Attorneys for Petitioner


By:_____/s/_____
       Linda A. Webb
       Alaska Bar No. 8806148

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the ___ day of May 2006, the foregoing
was served by mail/hand delivery on:

Michael Sean McLaughlin
Assistant Attorney General
Office of Special Prosecutions and Appeals
310 K Street, Suite 308
Anchorage, AK  99501

_____

Linda A. Webb