NOTICE

*Memorandum decisions of this court do not create legal precedent.* See Alaska
*Appellate Rule 214(d) and Paragraph 7 of the Guidelines for Publication of Court
of Appeals Decisions (Court of Appeals Order No. 3). Accordingly, this memorandum
decision may not be cited as binding precedent for any proposition of law.*

## IN THE COURT OF APPEALS OF THE STATE OF ALASKA

|                          |     |                                         |
|--------------------------|-----|-----------------------------------------|
| RONALD F. WYATT,         | )   | Court of Appeals No. A-8571             |
|                          | )   |                                         |
| Appellant,               | )   | Trial Court No. 1JU-00-914 CI           |
|                          | )   |                                         |
| v.                       | )   | MEMORANDUM OPINION                      |
|                          | )   |                                         |
| STATE OF ALASKA,         | )   | AND JUDGMENT                            |
|                          | )   |                                         |
| Appellee.                | )   | [No. 4955 — December 22, 2004]          |
|                          | )   |                                         |

Appeal from the Superior Court, First Judicial District, Juneau,
Larry R. Weeks, Judge.

Appearances:  James D. Oswald, Law Offices of James D.
Oswald, Seattle, for the Appellant. Michael Sean McLaughlin,
Assistant Attorney General, Office of Special Prosecutions and
Appeals, Anchorage, and Gregg D. Renkes, Attorney General,
Juneau, for the Appellee.

Before:  Coats, Chief Judge, and Mannheimer and Stewart,
Judges.

STEWART, Judge.
MANNHEIMER, Judge, concurring in part and dissenting in part.

Ronald F. Wyatt was convicted of first-degree murder and two counts of

tampering with evidence[1] for killing his wife and hiding her body.  We affirmed Wyatt's

---

[1]    AS 11.41.100(a) and AS 11.56.610(a)(1), respectively.

RECEIVED

EC 2 7 2004

LAW OFFICES OF

EXHIBIT E

conviction on direct appeal.[2]  The Alaska Supreme Court granted Wyatt's petition for hearing to review an evidentiary issue and affirmed that evidentiary issue on other grounds.[3]

Thereafter, Wyatt applied for post-conviction relief. Superior Court Judge Larry R. Weeks dismissed Wyatt's application, concluding that the application did not plead a prima facie case for relief.  Based on our review of the record, we affirm the superior court because Judge Weeks's findings are supported by the record and his findings support the conclusion that Wyatt did not plead a prima facie case for post-conviction relief.

### Background facts and proceedings

We discussed the facts underlying Wyatt's convictions in our opinion on direct appeal and need not repeat them here.  Wyatt claimed in his application that he received ineffective assistance from his trial and appellate counsel.  Wyatt also claims that Judge Weeks improperly dismissed his claim that the court's inquiry during trial concerning his right to testify was flawed.  Finally, Wyatt argues that Judge Weeks improperly ruled that several claims were statutorily barred.

### Did the superior court properly dismiss Wyatt's ineffective assistance claims?

Wyatt's application asserted that his trial counsel was ineffective in two ways:  first, for failing to request a jury instruction on a lesser-included offense, and second, for failing to independently test a blood stain found in the basement of his home

---

[2]  *Wyatt v. State*, Alaska App. Memorandum Opinion and Judgment No. 3607 at 25 (May 14, 1997), 1997 WL 250441 at *11.

[3]  *Wyatt v. State*, 981 P.2d 109, 116 (Alaska 1999).



EXHIBIT ·E 2 of 21

'055

and identified as his wife's blood. Judge Weeks ruled that Wyatt had failed to plead a prima facie case that his trial attorney had performed incompetently.

An applicant who pursues post-conviction relief based on ineffective assistance of counsel must first plead that the attorney's performance fell below the "range of competence displayed by one of ordinary training and skill in the criminal law."[4] The applicant's burden of pleading a prima facie case includes the burden to rebut the strong presumption that the trial attorney's actions were the product of "sound tactical considerations."[5] Also, the applicant must plead that the attorney's incompetence had an adverse impact on the case and contributed to the defendant's conviction.[6] Once the application demonstrates that the trial attorney's incompetence had an adverse impact on the case, the defendant must only plead a reasonable possibility that the attorney's incompetence contributed to the conviction.[7]

Wyatt claims that his application pleads a prima facie case of ineffective assistance because his trial attorney did not request jury instructions on a lesser-included offense. But at trial, Wyatt claimed that he was not guilty because he was not involved in any way in his wife's death.[8] Wyatt did not argue that a less culpable mental state than intent to kill applied, such that, while he may be guilty of a lesser homicide charge, he was not guilty of first-degree murder.

---

[4]   *Risher v. State*, 523 P.2d 421, 424 (Alaska 1974).

[5]   *See Tall v. State*, 25 P.3d 704, 708 (Alaska App. 2001) (quoting *State v. Jones*, 759 P.2d 558, 569 (Alaska App. 1998)) (citation omitted).

[6]   *Tall*, 25 P.3d at 708.

[7]   *See id.*

[8]   *Wyatt*, Memorandum Opinion and Judgment No. 3607 at 21, 1997 WL 250441 at *9.

EXHIBIT E 3 of 21

In his direct appeal, Wyatt contended that the superior court committed plain error by not instructing the jury on lesser-included offenses sua sponte.[9] We rejected that claim, noting that Wyatt's attorney had not submitted any lesser-included offenses and had not objected to the instructions that were given.[10] After Wyatt was convicted, he moved for a new trial contending that the jury should have been instructed on lesser-included offenses. As we discussed in Wyatt's direct appeal, Judge Weeks denied the motion and found as follows:

> There was not any evidence supporting any lesser included [instruction]. It is impermissible now for this court to grant a motion for retrial based upon a deliberate stance and trial tactic not to request lesser included instructions. As pointed out by the state to have done so would have been inconsistent with the defense position that Mr. Wyatt was and is innocent of the charges ...which he had been brought to trial for and eventually convicted of.[11]

We affirmed Judge Weeks's findings.[12]

Although the affidavit from Wyatt's trial counsel maintained that he had no "conscious, tactical" reason for not requesting a lesser-included instruction, Judge Weeks had previously found that the decision not to request such an instruction was, in fact, a tactical choice. Not only that, but Judge Weeks found at Wyatt's criminal trial that there was no evidence supporting a lesser-included instruction and we concluded in

---

[9]   *Id.* at 20-21, 1997 WL 250441 at *9.

[10]   *Id.* at 21-22, 1997 WL 250441 at *10.

[11]   *Id.* at 21, 1997 WL 250441 at *9.

[12]   *Id.* at 25, 1997 WL 250441 at *11.

EXHIBIT    E  4 of 21

Wyatt's direct appeal that the absence of lesser-included instructions did not constitute plain error.[13]

Furthermore, Wyatt's application did not plead facts that alleged how his case was adversely impacted and how the lack of lesser-included instructions contributed to his conviction. Nor did Wyatt allege that no competent attorney would have failed to request lesser-included offense instructions.

As Judge Weeks noted, Wyatt's defense theory at trial was that he had nothing to do with his wife's death. Because there was no basis to instruct on lesser-included offenses, and because Wyatt did not plead how his case was adversely impacted and how the failure to request lesser-included instructions contributed to his conviction, Judge Weeks did not err in dismissing Wyatt's claim that relied on the failure to request such an instruction.

Wyatt next claims that his trial attorney incompetently failed to independently test bloodstains found in the basement of the Wyatt household. The State tested the blood before trial and the test and accompanying statistical analysis showed that the DNA in the stain was inconsistent with Wyatt's blood and was consistent with the victim's blood.[14] The affidavit of Wyatt's trial attorney indicated that he did not recall whether he had been aware that there were extracts available for retesting. Judge Weeks dismissed this claim, in part, because Wyatt did not plead any prejudice.

Wyatt did not plead what the results of the testing would have shown. When an applicant claims ineffective assistance on the basis that counsel failed to pursue potentially favorable evidence, the applicant must "allege and prove what admissible

---

[13] *Id.* at 21, 1997 WL 250441 at *9-10.

[14] *Id.* at 22-23, 1997 WL 250441 at *10.

evidence would have resulted from a pretrial investigation or independent testing[.]"[15] Furthermore, Wyatt provided an innocent explanation for how his wife was the likely source of the bloodstain, maintaining that she had gotten a nosebleed while working on the house.

More importantly, Wyatt's final amended application did not plead facts that supported a claim that the failure to test the bloodstain fell outside the range of reasonable actions that might have been taken by an attorney skilled in criminal law. And, finally, Wyatt's application asserted only that it was "fundamentally unfair to presume that there [was] no prejudice." Wyatt's application did not plead facts that the defense case was adversely impacted and that the failure to test contributed to the defendant's conviction. We conclude that Judge Weeks properly rejected this claim for failing to plead a prima facie case of ineffective assistance of counsel.

Finally, Wyatt claimed that his appellate counsel provided ineffective assistance on appeal because the attorneys who handled his appeal did not pursue all potential issues. Wyatt's appellate attorneys both provided affidavits showing that the attorneys analyzed the case and pursued the issues that they thought were Wyatt's strongest issues and declined to address the weaker issues.

Judge Weeks dismissed this claim. He reasoned that the affidavits showed that Wyatt's appellate attorneys made the tactical choice to pursue potentially meritorious issues and not address the weaker issues. This type of tactical choice exemplifies competent appellate representation.[16] Because Wyatt failed to plead facts rebutting the presumption of competence, Judge Weeks properly rejected this claim.

---

[15] *Jones*, 759 P.2d at 574.

[16] See *Tucker v. State*, 892 P.2d 832, 836 (Alaska App. 1995).

EXHIBIT                  *E  6 of 21*

*Judge Weeks's ruling that several of Wyatt's claims were barred*

Judge Weeks ruled that AS 12.72.020(a) barred several of Wyatt's claims. Wyatt argues that the superior court improperly dismissed several claims.[17] However, these claims addressed issues that Wyatt raised or could have raised on direct appeal, issues that involved the admission or exclusion of evidence at trial, or issues that were decided on the merits in a previous proceeding.[18] Judge Weeks did not err in dismissing these claims.

*The inquiry into Wyatt's knowledge of his right to testify*

Wyatt argues that Judge Weeks improperly dismissed his post-conviction relief claim that the trial court did not adequately determine if he wished to testify. A defendant's right to testify is "undeniably one of the most fundamental rights constitutionally secured to a person accused of committing a crime."[19] The decision whether to testify lies with the defendant, not the defendant's attorney.[20] Under an inquiry

---

[17] The claims Wyatt advanced concerned the following issues: the superior court's jury instruction regarding state troopers; the superior court's refusal to give a requested jury instruction on the "theory of the defense"; the superior court's admission of victim's statement to shelter employee; the superior court's admission of certain lay opinion and character evidence; the superior court's admission of certain of Wyatt's out-of-court statements; the superior court's admission of testimony that Wyatt asserted his rights; the superior court's limitation on cross-examination of McColley; the failure by the police to record and preserve certain evidence; the superior court's admission of bank statements; the superior court's refusal to instruct the jury on Wyatt's statements made during police interrogation.

[18] *See* AS 12.72.020(a)(1), (a)(2), and (a)(5).

[19] *Knix v. State*, 922 P.2d 913, 918 (Alaska App. 1996).

[20] *See LaVigne v. State*, 812 P.2d 217, 219 (Alaska 1991).

EXHIBIT

E 7 of 21

adopted by our supreme court in *LaVigne v. State*,[21] before the defense rests without presenting the defendant's testimony, the trial judge must make sure that the defendant understands that the choice whether to testify rests with the defendant, not with trial counsel.[22] The critical inquiry under *LaVigne* is whether the defendant understands that he has the legal right to decide whether to testify.[23]

In *Hurn v. State*,[24] we recognized the *LaVigne* rule as a new rule of practice.

> The rule announced in *LaVigne* was a new rule of practice, designed to forestall post-trial litigation by requiring the trial judge to make an on-record memorial of a decision that is normally made in private discussions between attorney and client. A failure to comply with the *LaVigne* rule is harmful, not because that failure by itself proves that a defendant's constitutional right was abridged, but because the failure makes it harder to determine the facts underlying the defendant's claim of constitutional violation.[25]

We visited this issue further in *Mute v. State*.[26]

> The *LaVigne* inquiry is primarily intended to ensure that a criminal defendant understands that the decision whether or not to take the stand ultimately rests with the defendant personally, regardless of what the defendant's attorney may say or advise. Once a defendant understands this, it is not the trial judge's place to offer advice regarding this decision or

---

[21] 812 P.2d 217 (Alaska 1991).

[22] *See Mute v. State*, 954 P.2d 1384, 1386 (Alaska App. 1998).

[23] *See id.* at 1388.

[24] 872 P.2d 189 (Alaska App. 1994).

[25] *Id.* at 198.

[26] 954 P.2d 1384 (Alaska App. 1998).

EXHIBIT    E -8 of 21

to interrogate the defendant regarding the wisdom of their decision.[27]

Of course, a defendant has the right to testify at trial but also has the right to decline to testify and remain silent. But testifying and remaining silent are mutually exclusive choices. As we observed in *Knix v. State*,[28] a court cannot force a defendant to testify even if the court does not obtain the defendant's on-the-record waiver of the right to testify.[29] A waiver of the right to testify is necessarily distinguishable from the waiver of other trial rights, such as the right to a jury trial or the right to counsel, because in the absence of a waiver of jury or of counsel, the court must proceed with a jury trial or must appoint counsel if the defendant is eligible.

The inquiry required by the *LaVigne* decision, which is now incorporated into Criminal Rule 27.1(b),[30] a rule adopted after Wyatt's trial, is an inquiry adopted by the supreme court to promote two goals: to ensure a voluntary waiver of the defendant's right to testify and to assist appellate review of a defendant's claim to the contrary.[31] In

---

[27] *Id.* at 1386.

[28] 922 P.2d 913 (Alaska App. 1996).

[29] *See id.* at 918 n.6.

[30] Alaska Rule of Criminal Procedure 27.1(b) provides:

**Inquiry of Nontestifying Defendant.** Before the defense rests, the defense shall notify the court outside the presence of the jury that the defense intends to rest. If the defendant has not testified, the court shall ask the defendant to confirm that the decision not to testify is voluntary. This inquiry must be directed to the defendant personally and must be made on the record outside the presence of the jury.

[31] *See LaVigne*, 812 P.2d at 222.



*Weist v. Anchorage*[32] we rejected Weist's claim that the failure to conduct a Rule 27.1(b) inquiry required us to reverse his conviction. In that case, we observed that the supreme court's view that the *LaVigne* inquiry would assist the appellate process indicated that the supreme court contemplated "case-by-case appellate review for voluntariness" and "implicitly recognize[d] that the absence of an express inquiry should not be deemed a ground for automatic reversal."[33]  And in *Hurn*, we discussed the *LaVigne* inquiry and said: "A failure to comply with the *LaVigne* rule is harmful, not because that failure by itself proves that a defendant's constitutional right was abridged, but because the failure makes it harder to determine the facts underlying the defendant's claim of constitutional violation."[34]

In our published opinions addressing post-conviction relief claims based on a failure to strictly comply with *LaVigne*, we recognized that a prima facie claim generally requires an allegation that a defendant's decision not to testify was involuntary and his right to testify usurped.[35]

Initially, Wyatt's pro se application for post-conviction relief alleged that his trial attorney usurped his right to testify. But Wyatt amended his application twice. Each amended application abandoned the claim that his trial attorney usurped his right to testify. Instead, Wyatt claimed a constitutional violation because the trial court failed "to obtain from Mr. Wyatt an express waiver of his right to testify in his own behalf."

---

[32] 929 P.2d 668 (Alaska App. 1996).

[33] *Id.* at 669.

[34] *Hurn*, 872 P.2d at 198.

[35] *See Tall*, 25 P.3d at 709; *see also Broeckel v. State*, 900 P.2d 1205, 1208-09 (Alaska App. 1995).

Here, the record shows that Judge Weeks confirmed that Wyatt understood that the decision whether to testify was Wyatt's personal decision and that Wyatt was not governed by his attorney's advice. We note that Wyatt's final amended application did not allege a claim for relief that his attorney usurped his right to testify. And Wyatt's application did not allege any involuntariness claim whatsoever about the decision to rest the defense case without Wyatt's testimony. Thus, this case contrasts with *LaVigne* because LaVigne's attorney usurped LaVigne's right to testify.[36] Essentially, Wyatt alleged a claim for relief that was based only on a failure to explicitly comply with the *LaVigne* inquiry.

Furthermore, to the extent that Wyatt alleges that Judge Weeks's failure to explicitly ask him whether he voluntarily chose not to testify violated his constitutional rights, that was a claim that could have been raised on direct appeal by the attorney representing Wyatt at that time, but that attorney did not pursue that issue.[37] We agree with Judge Weeks that Wyatt's application, which claimed that the court's failure "to obtain from Mr. Wyatt an express waiver of his right to testify in his own behalf," did not allege a prima facie claim for post-conviction relief.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[36] *See LaVigne*, 812 P.2d at 220.

[37] *See* AS 12.72.020(a)(2).

MANNHEIMER, Judge, concurring in part and dissenting in part.

I agree that most of Wyatt's post-conviction relief claims could have been raised on direct appeal, and that those claims are therefore barred by AS 12.72.020(a)(2).

And, as I explain below, I further agree that the superior court properly rejected Wyatt's claim that his trial attorney was incompetent for failing to seek re-testing of the blood that was found in Wyatt's basement.

Further, with respect to Wyatt's claim that his trial attorney was incompetent for failing to seek jury instructions on lesser degrees of homicide, I reach the same conclusion as my colleagues, although I reach that conclusion for slightly different reasons.

However, with respect to Wyatt's claim that he was denied his right to testify at trial, I disagree with my colleagues. I conclude that the superior court committed error when it granted summary judgement to the State on this claim.

*Wyatt's claim that his trial attorney was incompetent for failing to re-test the blood found in Wyatt's house*

A small amount of blood was found in Wyatt's basement. The State's forensic expert testified that this blood was consistent with Wyatt's wife's blood type. Luminol testing of the basement suggested that, earlier, there had been more blood (either human or animal) in the basement, but that someone had cleaned it up.

Apparently, the blood sample was preserved in low-temperature conditions, and thus it was available for re-testing by Wyatt's defense attorney. In his petition for post-conviction relief, Wyatt asserts that his attorney's failure to re-test the blood amounted to incompetence. This claim fails for two reasons.

First, in an affidavit filed in support of his petition for post-conviction relief, Wyatt asserts that he was ready to testify that his wife's blood had spilled while she was suffering a nosebleed. If so, then Wyatt's defense attorney could reasonably conclude that re-testing would simply confirm the presence of the wife's blood. As this court noted in *State v. Jones*,

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. When a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

759 P.2d 558, 569 (Alaska App. 1988). [1]

Second, because Wyatt was a petitioner for post-conviction relief, it was his burden to show both (1) that his trial attorney acted incompetently in failing to seek re-testing of the blood sample and (2) that Wyatt suffered prejudice as a result of this incompetence — *i.e.*, there was a reasonable possibility that a re-test of the blood sample would have affected the result of the trial. Wyatt never had the blood re-tested during the litigation of his petition for post-conviction relief. Thus, it is impossible to tell whether his trial attorney's inaction had any effect on the outcome of Wyatt's trial.

Wyatt asked the superior court — and now asks this Court — to assume that re-testing would yield a result favorable to him. But Wyatt bears the burden of proof on this issue. As we explained in *Jones*, it is not enough for a defendant to point out that their trial attorney might have investigated or presented the case differently:

---

[1] Quoting *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).

> To satisfy the prejudice prong, [a petitioner for post-conviction relief is] required to allege and prove what admissible evidence would have resulted from [an omitted] pretrial investigation or [from] independent testing [of physical evidence], [or] what would have been said by potential witnesses who were not called, [or] what answers would likely have been elicited by a proposed but unpursued line of cross-examination.

*Jones*, 759 P.2d at 574. The superior court correctly ruled that, even assuming that a competent defense attorney would have had the blood re-tested, Wyatt failed to present any evidence that he was prejudiced.

> *Wyatt's claim that his trial attorney was incompetent for failing to request jury instructions on lesser degrees of homicide*

Wyatt was charged with first-degree murder for intentionally killing his wife. Wyatt's defense was that his wife was killed by someone else, and that he had no part in her death. Neither Wyatt nor the State asked for jury instructions on lesser degrees of homicide (second-degree murder, manslaughter, or criminally negligent homicide).

Following Wyatt's conviction (and before his appeal), Wyatt filed a motion seeking a new trial. In this motion, Wyatt argued that his trial was flawed because the trial judge failed to instruct the jury, *sua sponte*, on lesser degrees of homicide. The superior court denied this motion on two grounds: first, the court concluded that the evidence presented at Wyatt's trial would not have justified a jury verdict on a lesser degree of homicide; and second, the court concluded that Wyatt's trial attorney made a tactical choice not to seek jury instructions on lesser degrees of homicide. (The superior court's ruling is quoted in *Wyatt v. State*, Alaska App. Memorandum Opinion No. 3607 (May 14, 1997) at 23-24; 1997 WL 250441 at *9.)

EXHIBIT

E 14 /21

In Wyatt's ensuing direct appeal of his conviction, he again argued that the trial judge committed plain error in failing to instruct the jury, *sua sponte*, on lesser degrees of homicide. We rejected Wyatt's claim of error, based on our conclusion that "[both of the superior court's] findings are supported by the record." *Wyatt*, Memorandum Opinion No. 3607 at 24, 1997 WL 250441 at *10.

Thus, our decision in *Wyatt* resolved two issues: (1) the evidence presented at Wyatt's trial would not have justified jury instructions on lesser degrees of homicide (even if such instructions had been requested), and (2) Wyatt's trial attorney made a tactical decision to refrain from requesting jury instructions on lesser degrees of homicide. The doctrine of *res judicata*[2] precludes Wyatt from re-litigating either of these issues in a petition for post-conviction relief. *Brown v. State*, 803 P.2d 887, 888-89 (Alaska App. 1990); *see also* AS 12.72.020(a)(2) (codifying this rule of law).

*Wyatt's claim that he was denied his right to testify at trial*

Wyatt claims that he was denied the right to testify at his trial. Wyatt frames his claim as a purported violation of the rule announced by our supreme court in *La Vigne v. State*, 812 P.2d 217 (Alaska 1991), but this is only partially correct. Even if the trial judge satisfied the *La Vigne* rule (and I agree with my colleagues that he did), there is still another component to Wyatt's claim of error.

Wyatt's claim of error arises from a colloquy that occurred at the close of the defense case at his trial. Wyatt's attorney announced that the defense intended to rest.

---

[2] *See Alaska Wildlife Alliance v. State*, 74 P.3d 201, 205 (Alaska 2003): "*Res judicata* bars a subsequent action when a judgment in a prior action was (1) a final judgment on the merits ... (2) [issued by] a court of competent jurisdiction ... (3) in a dispute between the same parties ... about the same cause of action."

E-15 of 21

Because Wyatt had not testified during the defense case, the trial judge excused the jury and then, pursuant to *La Vigne*, addressed Wyatt personally:

> *The Court*: Mr. Wyatt, [your attorney] has indicated that he is ready to rest. You understand that you have an absolute right to testify, if you wish to testify?
>
> *Wyatt*: Yes, I do, sir.
>
> *The Court*: You understand that you can take the advice of [your attorney], but ultimately it's your decision, and you can make that decision yourself. You understand that?
>
> *Wyatt*: Yes, sir.

The trial judge then addressed both attorneys, inquiring whether they thought there were any other questions that should be posed to Wyatt. Both attorneys stated that nothing else was necessary.

At this point, the trial judge again asked the defense attorney if he intended to rest the defense case. The defense attorney reiterated that the defense would rest. Wyatt said nothing.

The trial judge then asked the prosecutor whether he was ready to present the State's rebuttal case. The prosecutor told the judge that he was not ready — because he had anticipated that Wyatt would take the stand, and because he had assumed that Wyatt's testimony would be lengthy. The prosecutor complained that "this [was] the first time [he had] heard that [Wyatt] wasn't going to testify". The prosecutor told the judge that he had sent a rebuttal witness home because he understood that Wyatt *was* going to testify, and because "[he] anticipated [Wyatt's] being on the stand for a number of days".



Because the prosecutor was not prepared to go forward, the trial judge recessed Wyatt's trial to give the prosecutor additional time to re-assemble his rebuttal case. Throughout this entire discussion, Wyatt said nothing.

But in Wyatt's petition for post-conviction relief, Wyatt claimed that he *had* wanted to testify — and that he was simply waiting patiently for the trial judge to ask him whether he wished to exercise his right to testify. Wyatt pointed out that the trial judge never asked him a question such as, "Knowing that it is your right to decide whether to testify, what is your decision?" Wyatt asserted that, because the trial judge never posed this additional question, Wyatt never had the chance to exercise his right to testify.

It is true that *LaVigne* speaks of ensuring a "voluntary waiver" of the right to testify. [3] But this is not quite accurate. As explained in our prior decisions construing *LaVigne* — particularly, as explained in *Knix v. State*, 922 P.2d 913, 918-19 & n. 6 (Alaska App. 1996) — the *LaVigne* rule does not require a formal waiver of rights of the same type required when, for example, a defendant waives the right to jury trial or the right to counsel.

This is because a defendant has two equally important constitutional rights: the right to testify, and the right to refrain from testifying. As we pointed out in *Knix*, a trial judge can not order a defendant to testify even when (for whatever reason) the defendant refuses to formally waive the right to testify. [4] Nor can a defendant be permitted to bring the trial to a halt by refusing to choose whether to assert or waive the right to testify. [5]

---

[3] 812 P.2d at 222: "[W]e believe [that] trial judges should make an on-the-record inquiry after the close of the defendant's case ... into whether a nontestifying defendant understands and voluntarily waives [the] right [to testify]."

[4] *Knix*, 922 P.2d at 919.

[5] *Id.*

The core rationale of *LaVigne* is "to [en]sure that a criminal defendant's failure to take the stand in his or her own defense [is] the result of a knowing and voluntary decision made [personally] by the defendant." [6] But in this context, "knowing" refers solely to a defendant's knowledge that they, and not their attorney, have the final say in this matter. As this Court explained in *Mute v. State*,

> The *LaVigne* inquiry is primarily intended to ensure that a criminal defendant understands that the decision whether or not to take the stand ultimately rests with the defendant personally, regardless of what the defendant's attorney may say or advise. Once a defendant understands this, it is not the trial judge's place to offer advice regarding this decision or to interrogate the defendant regarding the wisdom of their decision.

954 P.2d 1384, 1386 (Alaska App. 1998).

For these reasons, I agree with my colleagues that Wyatt's trial judge satisfactorily discharged his duty under *LaVigne*: the judge clearly informed Wyatt that it was Wyatt's personal decision whether to testify, and Wyatt affirmed (on the record) that he understood this.

Wyatt claims that, as a matter of law, even after a trial judge makes sure that a defendant understands their right to make this decision, the trial judge is then obliged to ask a follow-up question requiring the defendant to expressly state whether they wish to (a) testify or (b) refrain from testifying. But I agree with my colleagues that the law does not require this type of express declaration. Rather, the defendant's choice can be inferred from the record.

---

[6] *LaVigne*, 812 P.2d at 222.

(I note that this same rule applies in *Miranda* cases where the issue is whether a suspect in custody voluntarily waived their rights to silence and to the assistance of counsel before answering police questions. See *Lemon v. State*, 654 P.2d 277, 280 n. 6 (Alaska App. 1982), where this Court held that a suspect's waiver of *Miranda* rights need not be accompanied by an express declaration of waiver if the required waiver "can be clearly inferred from the actions and words of the person interrogated".[7])

Here, Wyatt confirmed that he understood that the decision to testify or refrain from testifying was his alone. He then sat silent while his attorney again announced that the defense case had ended. Wyatt continued to remain silent when the prosecutor complained that the State was not ready to present its rebuttal case, and that a recess of the trial would be required, because the prosecutor had anticipated that Wyatt would testify and would be on the stand for several days. Based on these events, the trial judge could reasonably infer that Wyatt had knowingly and voluntarily chosen not to testify. Thus, *LaVigne* was satisfied.

But our inquiry can not end here. It is true that the trial court record supports a finding that Wyatt personally chose not to testify. But in his petition for post-conviction relief, Wyatt claims that the record is misleading. He asserts that he wanted to testify and that he was waiting for the trial judge to ask him to declare his choice. Wyatt contends that, because of nervousness or reticence, he could not bring himself to interrupt the proceedings (and assert his desire to testify) when his defense attorney announced the end of the defense case and the judge recessed the trial to allow preparation of the State's rebuttal case.

---

[7] Quoting *North Carolina v. Butler*, 441 U.S. 369, 373; 99 S.Ct. 1755, 1757; 60 L.Ed.2d 286, 292 (1979).



E 19 of 21

If we confine ourselves to the record of Wyatt's trial proceedings, Wyatt's claim may seem implausible. But one of the main purposes of post-conviction relief litigation is to allow defendants to supplement the trial record so as to reveal or illuminate errors that would not be apparent to an observer of the underlying criminal trial. Here, Wyatt claims that despite his apparent acquiescence in the decision to end the defense case without his testimony, he did in fact want to testify.

Although Wyatt's claim is related to the *LaVigne* inquiry, this claim does not require a finding that the trial judge violated *LaVigne*. As explained above, I believe that the trial judge in fact complied with *LaVigne*. Wyatt's claim, properly understood, is that even though the trial record shows compliance with *LaVigne*, Wyatt nevertheless was deprived of the opportunity to testify.

A similar situation would be presented if, for instance, a defendant asserted (in a petition for post-conviction relief) that, even though they announced on the record that they had decided not to testify, this decision was not voluntary but rather was the result of improper coercion by their attorney or by some third party. Such a claim can not be resolved based solely on the record of the defendant's trial, nor is such a claim answered by proof that the trial judge punctiliously observed the requirements of *LaVigne*.

For this reason, even though I agree with my colleagues that there was no *LaVigne* violation at Wyatt's trial, I do not agree that this ends the matter. Even though Wyatt's trial judge complied with *LaVigne*, Wyatt's post-conviction relief claim can not be rejected on this basis — because his claim rests on facts outside the trial record.

And because Wyatt's claim rests on facts outside the record, Wyatt's post-conviction relief judge committed error in his handling of this claim. In his written decision, the post-conviction relief judge reviewed the facts surrounding the *LaVigne* inquiry at Wyatt's trial (the facts I have described above) and then concluded, based on those facts, that Wyatt could not possibly have harbored an unexpressed desire to testify.

But no matter how implausible Wyatt's claim appeared to the judge, the judge could not summarily reject this claim without a hearing — because the claim rested on assertions of fact outside the existing record and because, if those assertions were true, Wyatt arguably was denied his right to testify.

I therefore dissent from my colleagues' resolution of this issue. I would reverse the superior court's grant of summary judgement (on this claim alone) and direct the superior court to allow Wyatt to resume litigation of this claim.

-E- 21 of 21