IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT JUNEAU

| | |
|---|---|
| In the Matter of the Application for Post-Conviction Relief of:<br><br>RONALD F. WYATT, | Case No. 1JU-00-914 CI |

Certification: I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140, or (2) a residence or business address or telephone number of a victim of or witness to any crime unless it is an address used to identify the place of a crime or in a transcript of a court proceeding and disclosure of the information was ordered by the court.

## AFFIDAVIT OF RONALD F. WYATT

Ronald F. Wyatt, being first duly sworn, deposes and says:

1.  I am the applicant in the above-captioned matter

2.  In the trial of this matter, I was represented by Phillip P. Weidner. He was assisted by Elizabeth Friedman. Mr. Weidner also employed investigators to assist on the case. In this affidavit, I will refer to Mr. Weidner, Ms. Friedman, and the investigators, collectively, as the defense team.

AFFIDAVIT OF RONALD F. WYATT - 1

Law Offices of James D. Oswald
1218 Third Avenue, Suite 1500
Seattle, WA 98101
(206) 264-8558

1 of 7

**EXHIBIT H**

3. As the record reflects, the trial court did not instruct the jury in my trial regarding second degree murder, manslaughter, or any other lesser included offenses of first degree murder.

4. At no time during the trial of this matter did any member of the defense team discuss with me whether the jury would or should be instructed on lesser included offenses of first degree murder.

5. At no time prior to the trial did any member of the defense team discuss whether the Court would instruct the jury on lesser included offenses, or whether the defense team would request instructions on lesser offenses.

6. I am aware of no sense in which the fact that the jury was not instructed on lesser included offenses was the result of a conscious decision by the defense team, or by me.

7. Regarding my right to testify, both before and during my trial, I repeatedly asked Mr. Weidner to permit me to testify in my own defense. I believed that I could correct many of the misimpressions the prosecution was attempting to create in the minds of the jurors. At sentencing, I advised the Court that I had wanted to testify.

8. At the time of my trial, I did not understand that I had the absolute right to testify. I had asked my attorney to permit me to testify, and he had indicated that I would not testify, and had taken no steps to prepare me to testify, even though I had pointed out several areas in which I could provide information to rebut the prosecution's evidence.

AFFIDAVIT OF RONALD F. WYATT - 2

Law Offices of James D. Oswald
1218 Third Avenue, Suite 1500
Seattle, WA 98101
(206) 264-8558

9. When the judge asked whether I understood that I had the right to testify, I answered the question accurately. The judge did not ask me whether I chose to waive that right. If the judge had asked me, I would have explained that I did wish to testify.

10. If I had been permitted to testify, I would have testified to the following:

  (a) That the money transferred in October 1992 from the Citibank account held in the name of Diane Wyatt in trust for Ronald Wyatt, was actually my money. The prosecutor relied upon this transfer as evidence of my intent to take money from Diane Wyatt, and to take her life to prevent her from discovering the transfer. Because the Internal Revenue Service was doing back up withholding on my interest income, I had transferred my money into Diane's name, in trust for me. I would also have confirmed that the effect of having the money in Diane's name, in trust for me, was that if she died, the money would pass to me without probate. Therefore, there would have been no reason to transfer the money into another account if I intended to end Diane's life.

  (b) That Diane's net worth, apart from the home in which we lived, was quite modest. I was the primary source of income in the relationship, so that it was Diane, rather than I, who would have been impaired financially if our marriage had ended.

  (c) That my personal income from my appraisal business was quite substantial. My combined income from my appraisal business and the borough was routinely $12,000 to $15,000 per month.

AFFIDAVIT OF RONALD F. WYATT - 3

H-3 q 7

Law Offices of James D. Oswald
1218 Third Avenue, Suite 1500
Seattle, WA 98101
(206) 264-8558

(d) That the conversation with Diane in which I suggested that Diane give me control over her assets (testimony of Keith Perkins), addressed only a specific account totaling about $7,000. Diane had that amount in a checking account that earned no interest. I told her that if she wasn't going to bother to put it an account that earned interest, she should let me take care of it, and I would make sure it was in a place where it earned interest.

(e) That the evening when I was upset with Diane for being two and a half hours late for dinner was not the result of my wanting to control her activities. In fact, that was the day she and I had agreed we would celebrate my birthday, which had been the previous day. Diane had told me she would be home to make me a special dinner. I was hurt and disappointed that she broke that promise, and instead came home quite late. I was also concerned that she had been out fishing in an open skiff in threatening weather.

(f) That if the blood on the box in the basement was Diane's, it was likely caused by an event that occurred shortly before we went to Georgia in October, 1992. At that time, Diane was working on the gutters on the house, bumped her nose, and it began to bleed. She had sat on a bucket just inside the exit door from the basement, which is the area where the boxes were located. I got her a towel, which she used to control the bleeding.

(g) That within a couple years prior to Diane's death, there had been a major sewage overflow in the area of the basement where the Luminal reacted. I had cleaned up that overflow with Purex bleach. As

AFFIDAVIT OF RONALD F. WYATT - 4

H 4 of 7

Law Offices of James D. Oswald
1218 Third Avenue, Suite 1500
Seattle, WA 98101
(206) 264-8558

witnesses at the trial testified, bleach and blood elicit the same reaction from Luminal.

(h) That Leberman's testimony that he was so concerned about my changed attitude after the trip to Georgia in October that he went to see Diane at the downtown Alaska Airlines office, and that he saw her there, looking upset, as I stood in the corner, we false. I would have testified that Diane remained on vacation from the time we returned from our trip until she died. Therefore, it would have been impossible for the events he described to have occurred at the time frame he indicated. Moreover, I would have testified that, because Diane typically worked at the airport, rather than downtown, it is very unlikely that the scene he described ever occurred.

(i) When got back from Georgia, there had been a leak from the pressure relief valve of the furnace, which had caused water to overflow the bucket below the relief valve, and spread around the basement. As I repaired the furnace, Diane had cleaned up the water, and had rearranged the boxes, removed the lowest tier of boxes, which was wet, and placed the empty wet boxed on the lower deck to be disposed of.

(j) That the key to Susan Vik's Toyota, which was located on a key ring at our home, was an extra key that she had given us some years earlier so we could move her car from the airport when she traveled.

(k) That the location where I thought I had seen the Toyota on Friday morning, October 23, was not too small to hold a car, as asserted by the prosecution. In fact, I had parked an 8 foot wide, 22 foot long boat in

AFFIDAVIT OF RONALD F. WYATT - 5

H 5 ᶑ 7

Law Offices of James D. Oswald
1218 Third Avenue, Suite 1500
Seattle, WA 98101
(206) 264-8558

that space every week for a period of years, taking it in and out each week.

(l) That the debris that was identified by the prosecution as being the remains of a fire started by me was actually the remains of trash burning by our neighbor. The property lines in the area run on a diagonal, and the neighbor commonly burned debris on the beach very close to our property line. In fact, the location identified by the prosecution at trial was on our neighbor's property.

(m) That when I stopped at the pulp mill, I was having stomach problems, which I believe were the result of bad food eaten when we were traveling. I had not told the guard that I was sick because I was taking medication; I had told the guard I was sick and was taking medication. The medication was Pepto Bismal. Also, I did not go to the Ward Cove Market because I had stopped there some months earlier to go to the bathroom, and had been told that their bathroom was for employees only.

(n) If there was residual blood on the basement floor it was probably the result of an event in late Summer 1992, when I removed some old fish from the freezer, and had inadvertently left them on the floor for a day before taking them out of the house.

11. I specifically requested that my appointed appellate counsel, Margi Mock, include among the issues in the Petition for Review that the trial court had improperly advised the jury that the troopers were not on trial. I understood

AFFIDAVIT OF RONALD F. WYATT - 6

H - 6 ¶ 7

Law Offices of James D. Oswald
1218 Third Avenue, Suite 1500
Seattle, WA 98101
(206) 264-8558

that she had agreed to do so, and was surprised when I received a copy of the Petition, and learned that she had failed to do so.

FURTHER AFFIANT SAYETH NAUGHT.

*[signature]*
RONALD F. WYATT

SUBSCRIBED AND SWORN TO before me, the undersigned, a Notary Public in and for the State of Alaska, duly commissioned as such, this 28 day of August, 2001.

*[signature]*
Notary Public in and for the
State of Alaska
My commission expires Nov. 08, 2003

AFFIDAVIT OF RONALD F. WYATT - 7

Law Offices of James D. Oswald
1218 Third Avenue, Suite 1500
Seattle, WA 98101
(206) 264-8558

H 7 of 7